Date signed September 20, 2010



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | | | |
|---|---|---|---|---|
| In re: | * | | | |
| Bedford Town Condominium, | * | Case No. | 10-15831-TJC | |
| | * | Chapter | 11 | |
| ************************************ | * | | | |
| Bedford Town Condominium, | * | | | |
| Movant | * | | | |
| vs. | * | Motion | Docket No. 26 | |
| Washington Gas Light Co. | * | | | |
| Respondent | * | | | |

## MEMORANDUM OF DECISION

Before the Court is the Expedited Motion To Sanction Washington Gas Co. For Violation Of Automatic Stay Pursuant To 11 U.S.C. § 362(a)(1), (3) And (6) For Violation Of 11 U.S.C. §366(c) (the "Sanctions Motion"), Docket No. 26, filed by Bedford Town Condominium (the "Debtor"). Washington Gas did not file a response to the Sanctions Motion, but appeared at the

1

hearing held on this matter and argued against sanctions being imposed. For the reasons set forth herein, the Court will grant the Sanctions Motion and award the Debtor damages in the amount of $1,975.00 for Washington Gas's willful violation of the automatic stay.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and Local Rule 402 of the United States District Court for the District of Maryland. This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## Findings of Fact

*The Debtor's Filing and the Termination Notice*

> On March 19, 2010, the Debtor, a condominium regime that owns the Marylander, a 209-unit converted apartment complex, filed for Chapter 11 protection. The petition was filed in the name of Bedford Town Condominium and listed "The Marylander" as a second name used by the Debtor in the last eight years. Docket No. 1 at 1.

The 30-day stay prohibiting utility services from interrupting service to debtors as provided in 11 U.S.C. § 366(c)[1] was set to expire on April 18, 2010. On March 29, 2010, the Debtor filed a motion to determine adequate assurance of payment to its utility providers under §366(c)(2) and served the motion on Washington Gas, among others. The Court held a hearing on the motion to determine adequate assurance on April 15, 2010. Washington Gas did not respond to the motion or appear at the hearing.

On April 16, 2010, Washington Gas sent the Debtor a notice of its intention to terminate gas service on or after April 30, 2010 (the "Termination Notice"). The Debtor filed the Sanctions Motion on April 21, 2010.

---

[1] All statutory references hereinafter are to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as currently in effect, unless otherwise noted.

*Notice of the Bankruptcy Case Sent to Washington Gas*.

On March 24, 2010, the Court mailed the official form "Notice of Chapter 11 Bankruptcy Case" to Washington Gas at 101 Constitution Ave, N.W., Washington, D.C. 20001-3037. Docket No. 7 at 5.  The notice identified the Debtor as "Bedford Town Condominium aka The Marylander." *Id*. at 1.

On March 29, 2010, the Debtor filed the motion to determine adequate assurance of payment to its utility providers under § 366(c)(2).  Docket No. 10.  The Debtor served the motion on the following individuals at Washington Gas by first class mail, unless otherwise noted:

Washington Gas Light Company
A Public Utility
Ralph E. Fisher, Resident Agent
1800 N. Market Street
Frederick, MD 21701

Adrian P. Chapman, President
WGL Holdings, Inc.
101 Constitution Avenue, NW
Washington DC 20080

Lew Winarsky, Esquire (Via e-mail) [2]
Counsel for Washington Gas
101 Constitution Avenue, NW
Washington DC 20080

On April 1, 2010, the Debtor filed a motion to extend the time to file schedules and statement of affairs.  Docket No. 12.  The Debtor served the motion on the following individuals at Washington Gas by first class mail, unless otherwise noted:

Washington Gas Light Company
A Public Utility
Ralph E. Fisher, Resident Agent
1800 N. Market Street
Frederick, MD 21701

---

[2]  The Debtor stated at the hearing on the Sanctions Motion that Mr. Winarsky is no longer employed by Washington Gas.

Adrian P. Chapman, President
WGL Holdings, Inc.
101 Constitution Avenue, NW
Washington DC 20080

Lew Winarsky, Esquire (Via e-mail)
Counsel for Washington Gas
101 Constitution Avenue, NW
Washington DC 20080

On April 8, 2010, the Court issued a notice of hearing on the expedited motion for adequate assurance set for April 15, 2010. The notice of hearing was mailed to Washington Gas at 101 Constitution Ave, N.W., Washington, DC 20001-3037 on April 10, 2010. Docket No. 15 at p. 2.

The Court entered an order preliminarily resolving the motion to determine adequate assurance on April 16, 2010. The order was mailed to the following:

Washington Gas Light Company
A Public Utility
Ralph E. Fisher, Resident Agent
1800 N. Market Street
Frederick, MD 21701

Adrian P. Chapman, President
WGL Holdings, Inc.
101 Constitution Avenue, NW
Washington DC 20080

Lew Winarsky, Esquire
Counsel for Washington Gas
101 Constitution Avenue, NW
Washington DC 20080

*See* Docket No. 21-1 at p. 1.

On April 20, 2010, the Debtor filed a second motion to extend time to file schedules. Docket No. 24. The Debtor served the motion on the following individuals at Washington Gas by first class mail:

Washington Gas Light Company
A Public Utility
Ralph E. Fisher, Resident Agent
1800 N. Market Street
Frederick, MD 21701

Adrian P. Chapman, President
WGL Holdings, Inc.
101 Constitution Avenue, NW
Washington DC 20080

Docket No. 24 at p. 4.

 The Debtor filed the Sanctions Motion on April 21, 2010. The Debtor served the Sanctions Motion on the following individuals at Washington Gas by first class mail, unless otherwise noted:

Washington Gas Light Company
A Public Utility
Ralph E. Fisher, Resident Agent
1800 N. Market Street
Frederick, MD 21701

Adrian P. Chapman, President (VIA OVERNIGHT)
WGL Holdings, Inc.
101 Constitution Avenue, NW
Washington DC 20080

Docket No. 26 at p. 6.

 On April 23, 2010, at the Court's direction, the Debtor served a notice of the hearing on the Sanctions Motion on the following individuals at Washington Gas as follows:

Washington Gas Light Company (VIA FIRST-CLASS MAIL)
A Public Utility
Ralph E. Fisher, Resident Agent
1800 N. Market Street
Frederick, MD 21701

Adrian P. Chapman, President (VIA OVERNIGHT)
WGL Holdings, Inc.
101 Constitution Avenue, NW
Washington DC 20080

Lew Winarsky, Esquire (VIA E-MAIL)
Counsel for Washington Gas
101 Constitution Avenue, NW
Washington DC 20080

On April 23, 2010, the Court issued a memorandum of decision and order resolving the motion to determine adequate assurance as it pertained to Potomac Electric Power Company and Washington Suburban Sanitation Commission. Docket Nos. 31 and 32. The memorandum of decision and order were mailed to Washington Gas as follows:

Washington Gas Light Company
A Public Utility
Ralph E. Fisher, Resident Agent
1800 N. Market Street
Frederick, MD 21701-3293

Adrian P. Chapman, President
WGL Holdings, Inc.
101 Constitution Avenue, NW
Washington DC 20080-001

Lew Winarsky, Esquire
Counsel for Washington Gas
101 Constitution Avenue, NW
Washington DC 20080-0001

*See* Docket No. 34 at p. 13 and Docket No. 35 at p. 5.

*Washington Gas's Procedures for Processing Bankruptcy Notices.*

Ms. Leonore Pratt, the employee responsible for processing bankruptcy notices for Washington Gas, testified at the hearing held on April 28, 2010 about the actual date she became aware of the Debtor's bankruptcy and Washington Gas's process on handling bankruptcy notices. Ms. Pratt first became aware of Debtor's bankruptcy case on April 26, 2010. The notice that Ms. Pratt received on April 26, 2010 was a subpoena sent by the Debtor and hand delivered to Washington Gas's president at 101 Connecticut Ave, N.W., in the District of Columbia (the

6

"Washington Location"). Ms. Pratt testified that she had not received any of the other notices or motions described above.

Ms. Pratt explained that Washington Gas receives bankruptcy notices at two geographic locations. All bankruptcy notices sent to Washington Gas's Washington location are supposed to be redirected via interoffice mail to Ms. Pratt at 6801 Industrial Road, Springfield, Virginia (the "Virginia Location"). Washington Gas also receives bankruptcy notices via first class mail at the Virginia Location and those notices are also supposed to be directed to Ms. Pratt's attention. Thereafter, Ms. Pratt sends the bankruptcy notice information by facsimile to an outsourced customer service department located in Manila, Philippines, for further processing. Ms. Pratt then ensures that the bankruptcy information is noted on a debtor's account and that a second account is created for post-petition purposes.

## Conclusions of Law

Washington Gas concedes that the Termination Notice violated the automatic stay of §362. Washington Gas contends that the violation was not willful because it did not receive notice of the bankruptcy case and therefore was unaware that the automatic stay was in effect when it issued the Termination Notice. Nevertheless, the uncontroverted record in this case demonstrates that the Court and the Debtor sent numerous notices of the bankruptcy case to Washington Gas prior to the date it issued the Termination Notice. The Court finds and concludes that Washington Gas received notice of the bankruptcy case and it willfully violated the stay.

Upon the filing of a bankruptcy petition, all actions to collect a debt or claim owed by the debtor are prohibited under the automatic stay provisions set forth in §362(a).[3]  Section 362(k) provides that:

> (k)(1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

The Plaintiff carries the burden of proving five elements of a violation of the automatic stay.  *In re Sammons*, 253 B.R. 672, 679-680 (Bkrtcy. D.S.C. 2000) (citations omitted).  The Plaintiff must prove that: (1) debtor filed a petition; (2) debtor is an individual under the automatic stay provision; (3) creditor received notice of the petition; (4) creditor's action were in willful violation of the automatic stay; and (5) debtor suffered damages.  *Id.*

The first and second prongs of the inquiry are not at issue here.  There is no question that the Debtor filed for bankruptcy relief on March 19, 2010.  The Debtor here is a corporation and not an individual, in the literal definition of the word.  However, the Fourth Circuit held in *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir. 1986) that business entities are also protected by § 362(k) and that creditors who violate the stay may be sanctioned for damages.  *Id.* ("We agree that it seems unlikely that Congress meant to give a remedy only to individual debtors against

---

[3] Under §366, the stay terminates for utility companies if a chapter 11 debtor does not provide adequate assurance payments within thirty days of filing of the petition to the utility company.  Although the application of §366 has played a prominent role in this case, *see, e.g.*, Memorandum of Decision, Docket No. 31, there is no doubt that the automatic stay was in place on April 16, 2010.

those who willfully violate the automatic stay provisions of the Code as opposed to debtors which are corporations or other like entities. Such a narrow construction of the term would defeat much of the purpose of the section, and we construe the word "individual" to include a corporate debtor.")

The third prong requires that the creditor receive notice of the bankruptcy filing. A notice of a bankruptcy filing does not need to be formal or official to put a creditor on notice. *Green Tree Servicing, LLC v. Taylor* (*Green Tree Servicing*), 369 B.R. 282, 286 (S.D.W.Va. 2007). The Bankruptcy Code is silent on what notice is required and courts routinely find that knowledge can be imputed to the creditor through informal means. *Id.* at 287. "[N]otice may be oral or written and may be given by any means and in any manner." *In re Crawford*, 387 B.R. 506, 519 (Bkrtcy. S.D.N.Y. 2008). After notice is given, a creditor is subject to the automatic stay and damages for violations of the stay. *Id.*

Numerous courts have addressed cases where a bankruptcy notice was sent to a business that claimed the notice was not received. A creditor who has a complicated system of processing notices of bankruptcy is not immune from damages for violations of the stay. The court in *In re Withrow*, 93 B.R. 436, 439 (Bkrtcy.W.D.N.C. 1988) found that knowledge was imputed to a creditor who set up a complex system of distant agents and the creditor was responsible for consequences of a breakdown in the system. *Id.* ("It cannot create a complex system likely to produce stay violations and then assert the result of that complexity as a defense."). Large government agencies are also not immune from damages for violation of the stay. *In re Stucka*, 77 B.R. 777, 783 (Bkrtcy. C.D.Cal. 1987) (government agencies such as the Internal Revenue Service "may not shield their

violations of the stay . . . by erecting a blind of 'complexity'".); *In re Santa Rosa Truck Stop, Inc.*, 74 B.R. 641, 643 (Bankr.N.D. Fla. 1987) ("If the automatic stay is to afford any meaningful protection to a debtor attempting to reorganize, it must be enforced against the colossus of the I.R.S. just as it is against individual and corporate creditors who may persist in their collection efforts after a petition for relief has been filed."); *In re Price*, 103 B.R. 989, 993 (Bankr. N.D.Ill. 1989) ("The IRS explains that it processes over 100 million returns a year and must necessarily utilize computer with complex programming, which inevitably results in faults in the system. The IRS concludes that if its collection system had to be shut down as to all taxpayers every time a problem developed, very little revenue would be collected. This defense is disingenuous and without merit.").

Here, Washington Gas argues that the third prong is not met because it did not receive notice of the bankruptcy filing until the subpoena served on its president was sent to Ms. Pratt. As the case law provides, however, Washington Gas cannot shield itself from knowledge of a bankruptcy filing until a particular, designated employee receives by inter-office mail notices properly served pursuant to Fed. R. Bankr. P. 7004. A creditor like Washington Gas must have efficient and effective means of receiving and processing bankruptcy notices.

The Court finds that Washington Gas received numerous notices of the Debtor's case at the Washington Location prior to the issuance of the Termination Notice. Washington Gas, and individuals at Washington Gas, were sent at least six notices or motions of the bankruptcy case prior to issuing the Termination Notice. These items were sent to Washington Gas, its resident agent and its president by the Court and by the

Debtor.  As of the date of this Memorandum of Decision, the Court has not received any returned mail directed to Washington Gas.  *See*, *generally*, the Docket for this case.

Further, even after Washington Gas issued the Termination Notice, many more notices or motions were sent to Washington Gas, none of which were received by Ms. Pratt before the April 28 hearing.  Obviously, Washington Gas's process for handling bankruptcy notices and routing the notices to Ms. Pratt is inefficient and flawed.

The only notice of the Debtor's bankruptcy filing that stirred a reaction from Washington Gas was the hand-delivered subpoena to its president on April 26, 2010.  But the protections provided by the automatic stay would be substantially undermined if hand delivery of a subpoena to the president of a corporation were required to trigger its effect.

Washington Gas suggested that the reason it has no record of the many notices and motions in this case is that its records reflect that the Debtor's name is "the Marylander" rather than "Bedford Town Condominium."  But the evidence does not support this argument.  The notice of the bankruptcy case identified the Debtor as "Bedford Town Condominium aka The Marylander."  Docket No. 7 at 1.  And Ms. Pratt readily admitted that she checks bankruptcy notices under name, address or tax identification number.  She further testified that if she were to receive a notice for a customer she cannot identify—and this has never happened during her two-year tenure—she would take it to her supervisor and they would determine which customer was the subject of the notice.

Under the fourth prong, the Court must find that Washington Gas willfully violated the stay.  When a creditor acts intentionally with knowledge of a bankruptcy case, then the violation of the automatic stay is willful regardless of whether the creditor

had specific intent to violate the stay. *See Weatherford v. Tinmark Holdings,* 413 B.R. 273, 284 (D.S.C. 2009). A willful violation occurs when the creditor knows of the bankruptcy filing and attempts collection in spite of the bankruptcy. *Budget Service Co.*, 804 F.2d at 293.

Here, Washington Gas received numerous notices of the bankruptcy filing and nevertheless sent the Termination Notice to the Debtor on April 16, 2010. Although Washington Gas may not have had an intent to violate the stay *per se*, it intentionally sent the Termination Notice after receiving notice of the Debtor's bankruptcy case.

Lastly, a debtor must establish that it was damaged by the violation of the automatic stay. At the hearing on the Sanctions Motion, Washington Gas readily conceded that the Termination Notice violated the automatic stay and that it "indisputably rescinded" the notice. Further, there is no evidence that Washington Gas made any effort toward terminating service other than issuing the Termination Notice. Therefore, any damages incurred by the Debtor must have been incurred in the relatively brief period between the issuance of the Termination Notice and the hearing.

Mr. Patrick Gallagher, the property manager, testified that the Debtor's receipt of the Termination Notice caused significant concern among the tenants of the Debtor. He spent a number of hours reassuring the tenants that the service would not be terminated and otherwise addressing the Termination Notice. Mr. Gallagher, however, bills the Debtor at a flat fee of $3000 per month, s*ee* Docket No. 56 at ¶ 2, so the Debtor had no additional damages resulting from his efforts. And Mr. Gallagher could not quantify any economic damages incurred by the Debtor in addressing the Termination Notice other than legal fees.

The Debtor sought in excess of $4,345 in legal fees for filing and prosecuting the Sanctions Motion. This amount constituted eleven hours of attorney time at $395 per hour. But the Sanctions Motion was only five pages in length and the hearing on the Sanctions Motion lasted one hour. The Sanctions Motion and related hearing also implicated issues concerning adequate protection to Washington Gas under §366, and the time and fees incurred by the Debtor attributable to those matters is not compensable under §362(k). The Debtor also filed a supplemental brief on the Sanctions Motion, *see* Docket No. 45, but at that time Washington Gas had not even filed a response to the Sanctions Motion. The Court finds and concludes that five hours at $395 per hour is reasonable compensation for the attorney time incurred by the Debtor in filing and prosecuting the Sanctions Motion.

The Debtor cites *In re Campion*, 294 B.R. 313, 318 (BAP 9th Cir. 2003), for the proposition that defending an action for violation of the automatic stay is akin to a self-inflicted punishment, "for it is only within the control of the creditor to stop the escalation of its own damages." Docket No. 45 at p. 5. While that proposition is certainly true, the attorney fees must be reasonable. Further, here, Washington Gas did nothing to "escalat[e] its own damages." It quickly admitted the Termination Notice was improper and it did not even file a brief challenging the Sanctions Motion. It merely attended the hearing on the Sanctions Motion to argue that the Court should not award damages to the Debtor.

The Court further notes that it does not find that Washington Gas acted in bad faith or with malice. Nevertheless, the record is clear that Washington Gas received many notices of this case that were not sent to Ms. Pratt for processing. Under the

13

circumstances, Washington Gas should compensate the Debtor for its reasonable efforts to halt the Termination Notice.  As the *Campion* court stated, however,

> The only solace for the creditor who winds up willfully violating the automatic stay without meaning to do so is that a good heart may figure in the assessment of §362(h) damages. Sympathetic facts may be used to avert punitive damages and, in view of the trial judge's discretion over calculation of actual damage awards, may also figure into the calculus of actual damages.

*Id*. at 318.  Under these circumstances, attorney fees in the amount of $1975 are reasonable and appropriate.

## Conclusion

The Court will enter an order consistent with this Memorandum of Decision.

cc:

John D. Burns, Esquire
The Burns Law Firm, LLC
6303 Ivy Lane Suite 102
Greenbelt MD 20770

Bedford Town Condominium
c/o Patrick Gallagher
7961 Riggs Road
Adelphi, MD 20783

Office of the United States Trustee
6305 Ivy Lane – Suite 600
Greenbelt, MD 20770

Washington Gas Light Company
Scott J. Silverman
Nagle & Zaller, P.C.
7226 Lee DeForest Drive
Suite 102
Columbia, MD 21046

**END OF MEMORANDUM**