Date signed August 25, 2011



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | | |
|---|---|---|---|
| In Re: | * | | |
| Bedford Town Condominium | * | Case No. | 10-15831-TJC |
| | * | Chapter | 11 |
| Debtor | * | Docket | 101, 120 |
| | * | | |

## <u>MEMORANDUM OF DECISION</u>

Bedford Town Condominium (the "Debtor") seeks a Court order modifying a previous order that provided adequate assurance under 11 U.S.C. §366 to Potomac Electric Power Company ("PEPCO"). The Debtor has not been able to comply with the previous adequate assurance order and has fallen approximately $189,000 behind in its utility payments to PEPCO in the sixteen months since the order was issued. Now, as additional adequate assurance, the Debtor asks this Court to: (1) direct by decree the Debtor's adoption of a special assessment that the individual unit owners have not, and apparently will not, approve; (2) order the Debtor to

1

implement the special assessment, which includes strict collection and enforcement remedies against unit owners who do not pay the special assessment; and (3) order the Debtor to pledge the proceeds of the special assessment to PEPCO as adequate assurance under 11 U.S.C. §366. PEPCO, which has issued a termination notice as authorized by the prior order, argues that the prior order should not be modified and that, in any event, Debtor's proposal fails to give it adequate assurance of payments under 11 U.S.C. §366[1].

The Court held an emergency hearing on the motion on August 25, 2011. For the reasons set forth herein, the Court will deny the motion. However, the Court will order that, provided the Debtor pays PEPCO the amount of the current monthly utility charges as established at the hearing, $31,353.28, by August 30, 2011, PEPCO may not terminate service prior to September 30, 2011.

## FINDINGS OF FACT

The Debtor is a condominium regime that owns the Marylander, a 209 unit converted apartment complex located on Riggs Road in Adelphi, Maryland. The Debtor filed for Chapter 11 protection on March 19, 2010.

### *The Adequate Assurance Order*.

The Debtor's filing was precipitated primarily because of its inability to pay its charges for utility service. The Debtor's difficulties as of the petition date in meeting its utility obligations were previously addressed at length by the Court and will only be summarized here. *See In re Bedford Town Condominium*, 427 B.R. 380 (Bankr. D.Md. 2010) (the "Memorandum"). In a nutshell, the condominium units were not individually metered for utility service. The Debtor, not the unit holders, is billed for the utility services and is obligated to pay

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §101 et seq., as currently in effect.

for those services.  A substantial percentage of the individual unit holders (approximately 40% -

50%) were not paying their monthly assessments.  The parties referred to this problem as the

"free rider" problem, in that a substantial number of unit holders were not paying their

assessments but nevertheless enjoying the utility and other services essentially for free.  As a

result, the Debtor lacked the funds to pay its monthly utility service.  The Debtor owed

substantial pre-petition amounts to PEPCO, Washington Suburban Sanitation Commission

("WSSC"), and Washington Gas Company.

Soon after its bankruptcy filing, the Debtor filed an Expedited Motion to Determine

Adequate Assurance of Payment or to Modify Same Pursuant to 11 U.S.C. §366(c) as to

PEPCO, Washington Gas and WSSC. [Docket No. 10].  At that time, Pepco and other utilities

requested assurance of payment under §366(c) in an amount equal to two months of service.  In

PEPCO's case, that amounted to roughly $40,000.  The Debtor asked that it be allowed to

provide only $10,000 in deposit funds to each utility provider.

PEPCO and WSSC filed an objection to Debtor's motion. [Docket No. 17].  On April 15,

2010, the Court held an evidentiary hearing on the Debtor's motion and the utilities' objection

and issued a preliminary ruling.  The Court determined that "the Debtor's proposal, providing a

$10,000 deposit to WSSC and PEPCO payable in three monthly installments, did not provide

adequate assurance of payment for utility service and was therefore unacceptable." Order

Preliminarily Resolving Motion to Determine Adequate Assurance for Utility Payments to

Washington Suburban Sanitary Commission and Potomac Electric Power Company at 2, Docket

No. 21 (April 16, 2010).

The Court held a further evidentiary hearing on April 22, 2010.  During the course of the

hearings, the Debtor presented evidence of its efforts to improve its financial condition and to

3

address its problems meeting its utility obligations.  On April 23, 2010, the Court issued a Memorandum.  The Court first determined that that it had the authority to modify the amounts required by the utilities.  It then determined that a two-month deposit was appropriate and required that the Debtor provide an adequate assurance deposit of $40,000 to PEPCO.  However, in light of the Debtor's financial difficulties, the Court allowed the Debtor to post the $40,000 deposit at a rate of $3,333 per month until paid in full.

In the Memorandum, the Court also noted that "at a hearing on April 21, 2010, the Debtor stated it will make a special assessment to unit owners in the total amount of $20,000 for purposes of generating funds to provide the adequate assurance payment" and that "the Debtor anticipates that the special assessment can be completed in sixty days."  Memorandum at 10.  The Court required the proceeds of the special assessment to be applied toward the utility deposits.  Finally, the Court ordered that the Debtor must keep current on its post-petition utility charges.

In conjunction with the Memorandum, the Court entered an order at Docket No. 32 (the "Adequate Assurance Order") that, among other things, required the Debtor to (1) provide PEPCO with a deposit of $40,000, payable at $3,333 per month; (2) pay the proceeds of the special assessment toward the utility deposits; and (3) keep current on its post-petition utility charges.  The Adequate Assurance Order stated that "in the event the Debtor fails to pay the billed amount or make the $3,333 payment, the Utilities may issue a notice of discontinuation of service, and in doing so must provide reasonable notice of termination." *Id.*

**Subsequent Events**.

4

The Debtor continues to experience the "free rider" problem. At the time of the filing of the bankruptcy petition, unpaid monthly assessments exceeded $750,000. During the case, the unpaid monthly assessments have increased by approximately $250,000.

At the time the Court entered the Memorandum, the estimated pre-petition claim to PEPCO was approximately $60,000 and the monthly PEPCO bill averaged $20,000. During the case, the Debtor paid PEPCO approximately $85,000 and has complied with the Adequate Assurance Order to provide $3,333 a month toward the required deposit.[2] Nevertheless, the Debtor has not been able to keep current on it post-petition obligations as required by the Adequate Assurance Order. It owes PEPCO approximately $189,000 in post-petition amounts and does not have the funds to bring the account due. PEPCO has issued a notice of termination of service effective August 31, 2011.

The Debtor made the special assessment that was contemplated at the time of the Memorandum. However, consistent with prior experience, the unit holders who pay their condominium dues paid the special assessment, and the "free riders" did not. Thus, while the special assessment generated some funds, it was not enough to rectify the Debtor's difficulties meeting its utility obligations.

In the meantime, the Debtor successfully worked out payment arrangements with WSSC and Washington Gas. But its inability to keep PEPCO current remains.

**_The Motion_.**

Under the Debtor' current by-laws, it has been unable to obtain the votes necessary to adopt the resolutions that the current Board of Directors deems necessary to solve the free rider

---

[2] There is some dispute as to whether the Debtor has provided PEPCO with a $40,000 or a $50,000 deposit. That dispute need not be resolved for purposes of this decision.

5

problem.  Simply stated, the free riders have no incentive to agree to any further assessment or to grant the Board any enforcement mechanisms against those who do not pay up.

On July 6, 2011, the Debtor filed an expedited motion to (i) compel Debtor to implement and enforce a special resolution and a special assessment for the purposes of a balanced budget; and (ii) modify adequate assurance of payment pursuant to §366(c)(3)(A) and for assignment of collateral pursuant to §364(c) as to PEPCO, Washington Gas, and WSSC (the "Motion").  The Debtor requests the Court to enter an order "directing by decree" a Resolution and Special Assessment (the "Resolution").  The Resolution requires the Board of Directors to:

- assess a special assessment without requiring a vote of the majority owners if necessary for the continued operations of the association, for emergencies, to avoid litigation on debts, or in the event the Debtor is unable to meet its ordinary financial obligations;

- terminate utility services of units whose owners are in delinquency;

- collect rents directly from tenants to be applied toward delinquent accounts;

- require owner's to pay tenant's attorney's fees to defend any action for non-payment of rent;

- assess a 10% increase in condominium dues to all units effective July 1, 2011; and

- assess a $100,000 special assessment to be primarily paid by funds collected from delinquent accounts.

Lastly, the Motion asks the Court under §364(c) to enter an order assigning all net proceeds of the collection efforts implemented by the Resolution to WSSC, Washington Gas, and PEPCO pro rata to the Debtor's post-petition arrearages.  It is this latter provision that, according to the Debtor, provides PEPCO with the additional adequate assurance necessary to meet the requirements of §366.

6

## CONCLUSIONS OF LAW

At its core, the Motion seeks a modification of the Adequate Assurance Order. Ordinarily, the Motion would be governed by Fed. R. Civ. P. 60(b), made applicable here by Fed. R. Bank. P. 9024.  Rule 60(b) provides six categories of grounds to seek relief of a final court order.  A motion must be made within one year of the order if the relief is sought because of (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence; or (3) fraud, misrepresentation, or other misconduct.  Because the Motion was filed more than one year after the entry of the Adequate Assurance Order, these subsections do not apply.  The only other reason that the Debtor could seek a modification would be for any other reason that justifies relief from the operation of the judgment.  Fed. R. Bankr. P. 60(b)(6).

The Debtor argues that Rule 60(b) does not apply because §366 contemplates that the Court can modify any adequate assurance of payment, including previous adequate assurances ordered by the Court.[3]  The Debtor contends, therefore, that the standards of §366, not Rule

---

[3] Section 366 provides:

(a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

(c)(1)(A) For purposes of this subsection, the term "assurance of payment" means--
      (i) a cash deposit;
      (ii) a letter of credit;
      (iii) a certificate of deposit;
      (iv) a surety bond;
      (v) a prepayment of utility consumption; or
      (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee.

  (B) For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

7

60(b), apply here.  For purposes of resolving the Motion, the Court will apply the standards of §366 rather than those of Rule 60(b).  Even under these standards, however, the Motion will be denied.

Section 366 governs a utility's right to alter or discontinue service after the filing of a bankruptcy petition.  It provides that a utility may alter or discontinue service if it does not receive from the debtor within a certain time frame adequate assurance that is satisfactory to it. Section 366(c)(3) allows a court to modify the amount of the assurance of payment required by the utility.

Section 366(c)(1) sets forth acceptable forms of adequate assurance.  It provides that "the term 'assurance of payment' means-- (i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond;  (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee."

---

(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider--

(i) the absence of security before the date of the filing of the petition;
(ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
(iii) the availability of an administrative expense priority.

(4) Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

The Debtor's proposed adequate assurance is not one of the allowed forms of §366(c)(1). Assuming without deciding that accounts receivable can provide a basis for adequate assurance under §366, the Debtor's proposed form of adequate assurance fails to provide PEPCO with the necessary assurance required by §366. In essence, the Debtor asks the Court to force the Debtor to create receivables from the unit holders by ordering the special assessment, and then to assign those receivables to PEPCO as adequate assurance of payment. But the Debtor currently is owed over $1 million in pre and post-petition assessments from the same unit holders. The Court would not conclude that an assignment of the current amounts due from unit holders would constitute adequate assurance. Nor can it conclude that the assignment of the proposed receivables constitutes adequate assurance. Even taking into account the proposed enforcement mechanisms, the proposed receivables do not meet the standards of §366. Moreover, the proposed special assessment would generate accounts receivable of $100,000, and PEPCO is owed approximately $189,000. Considering the Debtor's inability to meet its utility obligations, the Court will not modify the Adequate Assurance Order.

Further, the Debtor's proposal for creating the receivables is problematic, to say the least. The Motion asks the Court to "direct by decree" the Special Assessment and the related enforcement mechanisms. This is extraordinary relief. The Debtor operates pursuant to by-laws and other corporate governance procedures duly adopted by its stakeholder, the unit owners. It admits it cannot obtain passage of the special assessment and the related provisions under its current operational documents. It asks the Court simply to override these operational documents and order the Special Assessment "by decree."

The Debtor states that it will file a plan of reorganization that incorporates these procedures. Whether such provisions are appropriate for a plan of reorganization remains to be

9

seen.  The Court, however, will not approve such extraordinary measures as presented in the current procedural posture—in a motion that was not served on the unit holders.  Serious due process concerns are raised by the proposal to modify the unit holders' rights without notice. Thus, for lack of notice alone the Court will deny the relief in the Motion to the extent it seeks the Court to "direct by decree" the Special Assessment.

However, the service termination date under the current termination notice is scheduled to occur in four business days, August 31, 2011.  Although the record reflects that PEPCO issued the notice timely, it also reflects that the parties engaged in what appears to have been good faith efforts to attempt to reach a resolution.  *See e.g*., Docket No. 106.   For these and other reasons, the hearing on the Motion was not heard until August 25, 2011.  As a result, there may not be sufficient time for the residents to respond to this decision.

Accordingly, the Court will order that, provided the Debtor pays PEPCO the amount of the current monthly utility charges as established at the hearing, $31,353.28, by August 30, 2011, PEPCO may not terminate service prior to September 30, 2011.

## CONCLUSION

The Court will enter an order consistent with this Memorandum.

**End of Memorandum**